COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
MATTHEW F. GATELY
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone:  201/845-9600
201/845-9423 (fax)
psp@njlawfirm.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSH SCHAUFELBERGER, BRIAN HAYDEN, TIM KEELEY, ROBERT CALHOUN, GLYN RAMAGE, ROBERT GREEN, STEVEN TYLER and MICHAEL TESTERMAN, Trustees of the EMPLOYERS & LABORERS LOCALS 100 AND 397 PENSION FUND, Derivatively on Behalf of COGNIZANT TECHNOLOGY SOLUTIONS CORP.,<br><br>       Plaintiffs,<br><br>vs.<br><br>FRANCISCO D'SOUZA, JOHN E. KLEIN, ZEIN ABDALLA, MAUREEN BREAKIRON-EVANS, JONATHAN CHADWICK, JOHN N. FOX, JR., LEO S. MACKAY, JR., MICHAEL PATSALOS-FOX, ROBERT E. WEISSMAN, THOMAS M. WENDEL, LAKSHMI NARAYANAN, | ) .No.<br>)<br>) VERIFIED SHAREHOLDER<br>) DERIVATIVE COMPLAINT<br>) FOR BREACH OF FIDUCIARY<br>) DUTY, CORPORATE WASTE<br>) AND UNJUST ENRICHMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) DEMAND FOR JURY TRIAL |

[Caption continued on following page.]

GORDON J. COBURN, STEVEN E.          )
SCHWARTZ and KAREN                   )
McLOUGHLIN,                          )
                                     )
                Defendants,          )
                                     )
        – and –                      )
                                     )
COGNIZANT TECHNOLOGY                 )
SOLUTIONS CORP., a Delaware          )
corporation,                         )
                                     )
                Nominal Party.       )
_____      )

# INTRODUCTION

1.      This is a shareholder derivative action filed by plaintiffs Josh Schaufelberger, Brian Hayden, Tim Keeley, Robert Calhoun, Glyn Ramage, Robert Green, Steven Tyler and Michael Testerman, Trustees of the Employers and Laborers Locals 100 and 397 Pension Fund maintaining its place of business at 20 Bronze Pointe North, Swansea, Illinois 62226, on behalf of nominal party Cognizant Technology Solutions Corp. ("Cognizant" or the "Company") against a majority of the members of its Board of Directors ("Board"), and certain current and former top officers and former directors of the Company, for breach of fiduciary duty, corporate waste and unjust enrichment.[1] This action arises from material representations devoid of a reasonable factual basis contained in Cognizant's Sustainability Reports.  In its 2014 and 2015 Sustainability Reports, Cognizant disclaimed the existence of any reported incidents of corruption at the Company's operations.  But, in fact, when these Reports issued, Cognizant's President and other members of senior management had been engaged in a massive bribery scheme in India designed to secure government construction-related permits and operating licenses for the Company by making

---

[1]      Defendants are Cognizant's directors – Francisco D'Souza, John E. Klein, Zein Abdalla, Maureen Breakiron-Evans, Jonathan Chadwick, John N. Fox, Jr., Leo S. Mackay, Jr. and Michael Patsalos-Fox; Cognizant's former directors – Robert E. Weissman, Lakshmi Narayanan and Thomas M. Wendel; and Cognizant's Chief Financial Officer ("CFO"), Karen McLoughlin, former President, Gordon J. Coburn, and former Chief Legal and Corporate Affairs Officer, Steven E. Schwartz (together, "defendants").  Emphasis is added unless otherwise stated.

improper payments to foreign officials. The government permits and operating licenses allowed Cognizant to operate in Special Economic Zones ("SEZs") that provided highly favorable tax holidays and related economic benefits essential to its current and future business and earnings prospects.

2.     Although headquartered in the Teaneck, New Jersey, the vast majority of Cognizant's operations are located in India. Because of its foreign operations, Cognizant is subject to the requirements of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, 15 U.S.C. §78dd-1, *et seq*. Enacted by the U.S. Congress in 1977, the FCPA forbids covered companies, like Cognizant, from paying bribes, kickbacks and other improper payments to foreign officials to obtain and/or retain business. The FCPA also requires issuers of U.S. registered securities, like Cognizant, to install and administer internal controls and accounting systems necessary to detect and deter improper payments to foreign officials, such as bribes and kickbacks, from being made in the issuer's name.

3.     India offers Cognizant several critical business advantages – including generous tax holidays, favorable labor costs, and less expensive regulatory compliance. India, however, has long been known as a hotbed for corrupt business practices, including bribery and other practices, with high potential to violate the FCPA. In fact, India has been consistently identified on corruption perception indices as a nation, like Brazil and China, that has a notoriously corrupt business climate.

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

4.     To allay shareholders' concerns regarding corruption risks, defendants publicly present Cognizant as a company fully committed to ethical, honest and lawful business practices.  Towards this end, Cognizant, while under the stewardship of defendants, adopted a formal anti-corruption policy and implemented a detailed code of ethics.  In the "Core Values and Code of Ethics" and the "Cognizant Technology Solutions Anti-Corruption Statement," Cognizant expressly forbade directors, officers, employees and other agents of the Company from paying bribes or making other improper payments to foreign officials to obtain or retain contracts and other things of value.

5.     Further, in the Company's 2014 and 2015 Sustainability Reports, which defendants caused to be widely disseminated to Cognizant stakeholders, the Company represented, among other things, that Cognizant conducted thorough audits regarding anti-corruption practices and did not find any instances of corruption in either 2014 or 2015.  Specifically, the 2014 and 2015 Sustainability Reports stated, respectively: "No incidents [of corruption were] reported in 2014," and "There were no incidents [of corruption] reported in 2015." The Sustainability Reports further represented that Cognizant provided extensive anti-corruption training and that its "Enterprise Risk

Management group conducts annual risk analysis surveys covering all business units and corporate functions to assess the likelihood of various risks including corruption." For example, the 2014 Sustainability Report stated that Cognizant "delivered 331,114 hours of Code of Ethics training through eLearning in 2014" and "delivered live Code of Ethics trainings to targeted audiences of over 18,000 associates in India and the Philippines." Similarly, the 2015 Sustainability Report stated that Cognizant "delivered 689,288 hours of Code of Ethics training through eLearning in 2015" and "delivered live Code of Ethics trainings to targeted audiences of over 203,947 associates in India."

6.      In truth, Cognizant's anti-corruption controls were not nearly as robust as defendants falsely represented. In fact, defendants lacked a reasonable factual basis for their positive statements in the 2014 and 2015 Sustainability Reports praising the Company's anti-corruption legal compliance. Had defendants exercised the diligence required by their fiduciary duties of candor, loyalty and good faith and investigated, they would have discovered the true facts. Namely, that Cognizant's President, defendant Gordon J. Coburn ("Coburn"), and Chief Legal and Corporate Affairs Officer, defendant Steven E. Schwartz ("Schwartz"), and other members of senior management had been, since 2012, engaged in a bribery scheme in India designed to unlawfully secure business advantages for the Company.

7.    Thus, in breach of their fiduciary duties, it was materially false and misleading for defendants to state that Cognizant had performed a thorough audit of the Company's anti-corruption compliance and that there were no incidents of corruption reported in 2014 and 2015.   When the 2014 and 2015 Sustainability Reports were issued, Cognizant's senior management was facilitating the Indian bribery scheme by overriding and/or failing to enforce the Company's internal financial controls designed to detect, report and prevent such bribes and improper payments.

8.    The unlawful India bribery scheme, orchestrated from Cognizant's New Jersey offices, continued unabated until late September 2016.  Then on September 30, 2016, Cognizant suddenly announced that it was conducting an internal investigation into whether certain payments relating to facilities in India were made improperly and in possible violation of the FCPA and other laws.  The Company also revealed that it had notified the U.S. Department of Justice ("DOJ") and U.S. Securities and Exchange Commission ("SEC") of its internal investigation.   That same day, Cognizant's then-President, Coburn, suddenly resigned without explanation.  Then, on March 1, 2017, Cognizant admitted that the Indian bribery scheme likely stretched from at least 2010 to 2015, that it involved payments exceeding $6 million, and that several members of the Company's senior management may have been involved in the scheme.  In response to this news, Cognizant's stock price declined from $55.00 to

$47.71 per share, or more than 13%, wiping out more than $4.4 billion in once valuable shareholders' equity.

9.      Defendants' breaches of their fiduciary duties of candor, good faith and loyalty have severely damaged Cognizant.  On February 15, 2019, after already incurring over $60 million in investigative costs, Cognizant agreed to pay over $25 million in fines and penalties to resolve SEC enforcement proceedings brought as a result of Cognizant's failure to comply with the anti-bribery and books-and-records provisions of the FCPA.  Additionally, Cognizant has been named as a primary defendant in a costly and expensive to defend class action lawsuit for violations of the anti-fraud provisions of the federal securities laws.  Moreover, while under the stewardship of defendants, Cognizant wastefully spent approximately $42 million to repurchase 650,000 shares of Cognizant stock on the open market at prices artificially inflated by defendants' false and misleading statements about the effectiveness of Company's FCPA and anti-corruption and ethics legal compliance.

10.      Although Cognizant has been severely damaged by defendants' misconduct, defendants have not fared nearly so badly.  On the contrary, they have pocketed at least $23,589,201 in director and executive compensation not justified by Cognizant's performance while under their stewardship.  Moreover, defendants D'Souza, Klein, Breakiron-Evans, Fox, Mackay, Wendel, Narayanan, Coburn, Schwartz and McLoughlin have reaped $80,493,140 in unlawful insider trading

proceeds by selling 1,331,237 shares of their personal Cognizant stock based on adverse material non-public information.

11.     Nevertheless, the Cognizant Board has not – and will not – take legal action against the Cognizant directors responsible for this debacle.  By this action, plaintiffs seek to vindicate Cognizant's rights against its wayward fiduciaries.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction under 28 U.S.C. §1332(a)(2).  This is because plaintiffs and defendants are citizens of the different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this Court under 28 U.S.C. §1391(a), because: (i) Cognizant maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the

defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Cognizant, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

15.     Plaintiffs are Josh Schaufelberger, Brian Hayden, Tim Keeley, Robert Calhoun, Glyn Ramage, Robert Green, Steven Tyler and Michael Testerman, in their capacities as Trustees of the Employers and Laborers Locals 100 and 397 Pension Fund.   Employers and Laborers Locals 100 and 397 Pension Fund is, and has continuously been, a shareholder of Cognizant since at least 2012.  Plaintiffs are each citizens of the State of Illinois.

16.     Nominal party Cognizant, a Delaware corporation, is a technology-driven professional services corporation with its principal executive offices located at 500 Frank W. Burr Boulevard, Teaneck, New Jersey 07666.  The Company's shares traded on the NASDAQ under the symbol "CTSH."  Cognizant is a citizen of the States of Delaware and New Jersey.

17.     Defendant Francisco D'Souza ("D'Souza") has served as CEO and a director of Cognizant since 2007.  D'Souza received at least $12,030,863 in salary, bonus and other incentive-based compensation not justified by the Company's

- 8 -

performance while under his stewardship. While Cognizant stock sold at artificially inflated prices, D'Souza sold 723,583 shares of Cognizant stock for unlawful insider trading proceeds of $42,371,290. Defendant D'Souza is a citizen of the State of New Jersey.

18.     Defendant John E. Klein ("Klein") has served as a director of Cognizant since 1998. He also has served on the Audit, Compensation and Corporate Governance Committees of the Cognizant Board. Klein received at least $494,947 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship. While Cognizant stock sold at artificially inflated prices, Klein sold 61,229 shares of Cognizant stock for unlawful insider trading proceeds of $3,753,338. Defendant Klein is a citizen of the State of Florida.

19.     Defendant Zein Abdalla ("Abdalla") has served as a director of Cognizant since September 15, 2015. He also has served on the Audit and Corporate Governance Committees of the Cognizant Board. Abdalla received at least $323,947 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship. Defendant Abdalla is a citizen of the State of Connecticut.

20.     Defendant Maureen Breakiron-Evans ("Breakiron-Evans") has served as a director of Cognizant since 2009. She also has served on the Audit and Corporate

Governance Committees of the Cognizant Board. Breakiron-Evans received at least $350,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under her stewardship. While Cognizant stock sold at artificially inflated prices, Breakiron-Evans sold 20,000 shares of Cognizant stock for unlawful insider trading proceeds of $1,199,900. Defendant Breakiron-Evans is a citizen of the State of Florida.

21.    Defendant Jonathan Chadwick ("Chadwick") has been a director of Cognizant since 2016. He also has served on the Audit Committee of the Cognizant Board. Chadwick received at least $359,302 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship. Defendant Chadwick is a citizen of the State of California.

22.    Defendant John N. Fox, Jr. ("Fox") has been a director of Cognizant since 2007. He also has served on the Compensation and Corporate Governance Committees of the Cognizant Board. Fox received at least $313,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship. While Cognizant stock sold at artificially inflated prices, Fox sold 30,645 shares of Cognizant stock for unlawful insider trading proceeds of $1,838,975. Defendant Fox is a citizen of the State of California.

23.    Defendant Leo S. Mackay, Jr. ("Mackay") has served as a director of Cognizant since 2012.  He also has served on the Audit Committee of the Cognizant Board.  Mackay received at least $316,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship.  While Cognizant stock sold at artificially inflated prices, Mackay sold 25,780 shares of Cognizant stock for unlawful insider trading proceeds of $1,555,823.  Defendant Mackay is a citizen of the State of Virginia.

24.    Defendant Michael Patsalos-Fox ("Patsalos-Fox") has served as a director of Cognizant since 2012.  He also has served on the Compensation and Corporate Governance Committees of the Cognizant Board.  Patsalos-Fox received at least $313,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship.  Defendant Patsalos-Fox is a citizen of the State of New Jersey.

25.    Defendant Robert E. Weissman ("Weissman") served as a director of Cognizant from 2001 to December 2017.  Weissman also served on the Compensation and Corporate Governance committees of the Cognizant Board.  Weissman received at least $328,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship.  Defendant Weissman is a citizen of the State of Florida.

26.     Defendant Thomas M. Wendel ("Wendel") served as a director of Cognizant from 2003 to April 2017.  He also served on the Audit and Corporate Governance Committees of the Cognizant Board.  Wendel received at least $325,447 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship.   While Cognizant stock traded at artificially inflated prices, Wendel sold 15,000 shares of Cognizant stock for unlawful insider trading proceeds of $946,350.   Defendant Wendel is a citizen of Missouri.

27.     Defendant Lakshmi Narayanan ("Narayanan") served as a director of Cognizant from 2003 to April 2017.  He also served as Vice Chairman of the Cognizant Board from 2007 to April 2017.  Narayanan received at least $299,947 in directors' fees, consisting of cash and incentive stock awards, from Cognizant not justified by the Company's performance while under his stewardship.   While Cognizant stock traded at artificially inflated prices, Narayanan sold 200,000 shares of Cognizant stock for unlawful insider trading proceeds of $12,968,679.   Defendant Narayanan is a citizen of India.

28.     Defendant Gordon J. Coburn ("Coburn") served as President of Cognizant from 2012 to September 27, 2016.  Coburn received at least $4,494,983 in salary, bonus and other incentive-based compensation not justified by the Company's performance while under his stewardship.  While Cognizant stock traded at artificially

inflated prices, Coburn sold 159,368 shares of Cognizant stock for unlawful insider trading proceeds of $9,949,617. Defendant Coburn is a citizen of the State of Colorado.

29. Defendant Steven E. Schwartz ("Schwartz") served as Cognizant's Executive Vice President and Chief Legal and Corporate Affairs Officer from December 2013 to November 2016. Schwartz previously served as General Counsel and Secretary of Cognizant from 2007 to November 2013. Schwartz received a salary, bonus and other incentive-based compensation not justified by the Company's performance while under his stewardship. While Cognizant stock traded at artificially inflated prices, Schwartz sold 29,405 shares of Cognizant stock for unlawful insider trading proceeds of $1,801,965. Defendant Schwartz is a citizen of the State of Connecticut.

30. Defendant Karen McLoughlin ("McLoughlin") has served as Chief Financial Officer of Cognizant since 2012. McLoughlin received at least $3,637,530 in salary, bonus and other incentive-based compensation not justified by the Company's performance while under her stewardship. While Cognizant stock traded at artificially inflated prices, McLoughlin sold 66,227 shares of Cognizant stock for unlawful insider trading proceeds of $4,107,203. Defendant McLoughlin is a citizen of the State of New Jersey.

## THE FIDUCIARY DUTIES OF COGNIZANT'S
## DIRECTORS AND OFFICERS

31.     By reason of their positions as Cognizant directors and/or officers and because of their ability to direct and control the Company's business and corporate affairs, defendants owed Cognizant and its shareholders a fiduciary duty to use their utmost ability to control and manage Cognizant in an honest and lawful manner. Toward that end, Cognizant's directors and officers owed the Company and its shareholders fiduciary duties to exercise candor, loyalty, good faith and reasonable supervision over the Company's management, policies, practices and internal controls.

32.     More specifically, as Cognizant's directors and officers, defendants' fiduciary duties required them to, among other things: (i) ensure that the Company complied with its legal obligations and requirements, including legal compliance with the anti-bribery provisions of the FCPA, as well as acting only within the scope of legal authority and disseminating truthful and accurate statements to Cognizant shareholders; (ii) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to lawfully maximize the value of the Company's shares; (iii) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and internal controls; (iv) remain fully informed as to how Cognizant conducts its operations and, upon

- 14 -

receipt of notice or information of imprudent or unsound conditions or practices, make

reasonable inquiry in connection therewith and take steps to correct such conditions or

practices and make such disclosures as are necessary to comply with the securities

laws; (v) ensure that Cognizant was operated in a diligent, honest and prudent manner

in compliance with all applicable laws, rules and regulations, including the federal

anti-corruption and securities laws; and (vi) refrain from breaching their fiduciary

duties to the Company by adopting practices, procedures and controls inconsistent

with their fiduciary duties of care, candor, loyalty and good faith.

33.   Additionally, the Cognizant Board has adopted and adheres to a

framework designed to assist individual directors in the exercise of their fiduciary

duties and responsibilities in order to serve the best interests of the Company and its

shareholders.  More particularly, the Corporate Governance Guidelines provide, in

relevant part, as follows:

A.   **Director Responsibilities**

1.   <u>Oversee Management of the Company</u>.  ***The principal responsibility of the directors is to oversee the management of the Company*** and, in so doing, serve the best interests of the Company and its stockholders.  This responsibility includes:

\*     \*     \*

- Evaluating whether corporate resources are used only for appropriate business purposes;

- ***Establishing a corporate environment that promotes timely and effective disclosure (including robust and appropriate controls, procedures and incentives), fiscal***

*accountability, high ethical standards and compliance with all applicable laws and regulations*;

\*       \*       \*

- Developing a corporate governance structure that allows and encourages the Board to fulfill its responsibilities;

- Providing advice and assistance to the Company's senior executives; and

- Evaluating the overall effectiveness of the Board and its committees.

2.    Exercise Business Judgment. In discharging their fiduciary duties of care, loyalty and candor, directors are expected to exercise their business judgment to act in what they reasonably believe to be the best interests of the Company and its stockholders.

3.    Understand the Company and its Business. Directors have an obligation to become and remain informed about the Company and its business, including the following:

\*       \*       \*

- The relative standing of the business segments within the Company and vis-à-vis competitors;

- The factors that determine the Company's success; and

- *The risks and problems that affect the Company's business and prospects*.

4.    Establish Effective Systems. *Directors are responsible for determining that effective systems are in place for the periodic and timely reporting to the Board on important matters concerning the Company*, including the following:

- Current business and financial performance, the degree of achievement of approved objectives and the need to address forward-planning issues;

- 16 -

- Future business prospects and forecasts, including actions, facilities, personnel and financial resources required to achieve forecasted results;

- Financial statements, with appropriate segment or divisional breakdowns;

- ***Compliance programs to assure the Company's*** compliance *with law and corporate policies*;

- Material litigation and governmental and regulatory matters;

- Monitoring and, where appropriate, responding to communications from stockholders; and

- Directors should also periodically review the integrity of the Company's internal control and management information systems.

*    *    *

10.    <u>Ethics, Conflicts and Board Conduct</u>.  ***Members of the Board shall act at all times in accordance with the Company's code of ethics, which is applicable to all directors as well as all other Company personnel.***  This includes, in particular but without limitation, strict adherence to the Company's policies with respect to conflicts of interest, confidentiality, and ethical conduct in all business and personal dealings.[2]

34.    Under the Charter of the Audit Committee of the Cognizant Board, the members of the Audit Committee are responsible for the Company's financial reporting processes.  This includes, among other things, reviewing and approving Cognizant's annual and quarterly financial reports filed on SEC Forms 10-K and 10-Q and earnings press releases filed on SEC Form 8-K in conjunction with their release to

---

[2]    Here, as elsewhere, emphasis is added unless otherwise noted.

Cognizant shareholders.  In particular, the Audit Committee Charter provides, in relevant part, as follows:

> The purpose of the Audit Committee is to assist the Board of Directors' oversight of the Company's accounting and financial reporting processes and the audits of the Company's financial statements including, but not limited to, oversight of:
>
> • The integrity of the Company's financial information reported to the public and the adequacy of the Company's internal controls;
>
> *     *     *
>
> • ***The performance of the Company's internal audit functions; and***
>
> • ***The review and evaluation of enterprise risk management***.
>
> *     *     *
>
> 6.    Review and Discussion. The Audit Committee shall review and discuss with the Company's management and independent auditor the Company's audited financial statements, including the matters about which the applicable rules of the PCAOB require discussion.
>
> 7.    Recommendation to Board Regarding Financial Statements. The Audit Committee shall consider whether it will recommend to the Board of Directors that the Company's audited financial statements be included in the Company's Annual Report on Form 10-K.

## CONSPIRACY, AIDING AND ABETTING AND CONCERTED ACTION

35.    In committing the wrongful acts complained of herein, defendants pursued or joined in the pursuit of a common course of conduct and acted in concert with one another in furtherance of a common plan or design.  In addition to the

wrongful conduct complained of herein giving rise to primary liability, defendants further aided and abetted and/or assisted each other in breach of their fiduciary duties.

36.     Each of the defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such action to substantially assist the commission of the wrongdoing complained of herein, each defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## FACTUAL ALLEGATIONS

**Cognizant's Business and Foreign Corruption Risks**

37.     Cognizant is a technology-driven professional services company. Although based in Teaneck, New Jersey, the vast majority of the Company's business and operations are located in India. This is by design. India offers Cognizant significant financial benefits in exchange for locating its operations in government-licensed SEZs. These benefits include, among other things, generous tax holidays, favorable labor costs, and less expensive and time-consuming regulatory compliance, which Cognizant uses to offer its digital information and technology products and services to its customers at extremely competitive prices. But first the Company must obtain and/or retain government construction-related permits and operating licenses needed to situate its operations within the SEZs. Otherwise, the economic advantages

detailed above would be unavailable and Cognizant's business strategy and results could be potentially impaired.

38.     Conducting business in India is not without significant corruption risks, *i.e.*, bribery, kickbacks and similar improper payments.  On the contrary, India has long been known as a hotbed for corrupt business practices and has been consistently ranked on corruption perception indices as a nation with a notoriously corrupt business climate.  According to Transparency International's Corruption Perceptions Index, for example, in 2014, 2015 and 2016, India received scores of 38, 38 and 40, respectively, making it the 85th, 76th and 79th most corrupt country in the world out of 175, 168 and 176 nations surveyed, respectively.  The Corruption Perceptions Index ranks countries and territories based on how corrupt their public sector is perceived to be.  A country or territory's score indicates the perceived level of public sector corruption on a scale of 0 (highly corrupt) to 100 (very clean).  A country or territory's rank indicates its position relative to the other countries and territories on the index.

39.     On February 11, 2016, in an article entitled "India Remains One of the Most Corrupted Countries in the World," *Forbes* reported, in relevant part, as follows:

> India remains one of the most corrupt countries in the world, according to a recent report by Transparency International.
>
> The prominent watchdog group issued its annual Corruption Perceptions Index (CPI), which scores and ranks nations based upon expert perceptions of public sector corruption.  A score of 0 corresponds

to a rating of "highly corrupt" while 100 means a country is "very clean."

India garnered a score of 38, making it the 76th most corrupt country in the world out of the 168 nations surveyed. Brazil, Thailand, Tunisia, Zambia and Burkina Faso obtained the same score.

40.     As a result of its foreign operations, Cognizant is subject to the FCPA. To help minimize corruption abroad, the FCPA prohibits companies from making improper payments, such as bribes and kickbacks, to foreign officials for the purpose of obtaining or retaining business. The FCPA also requires companies whose securities are listed in the United States to meet its accounting provisions. These accounting provisions, which operate in tandem with the anti-bribery provisions of the FCPA, require corporations covered by the provisions to: (i) make and keep books and records that accurately and fairly reflect the transactions of the corporation; and (ii) devise and maintain an adequate system of internal accounting controls.

41.     The costs of non-compliance with the FCPA can be – and often are – enormous. As the international law firm of White & Case LLP reported in 2010: "Gone are the days when a financial settlement of US$44 million would capture one's attention, as it did when Baker Hughes settled with the DOJ and SEC in 2007 for what was then the largest FCPA settlement. . . . [I]n the wake of Siemen's US$800 million settlement, it is more common to see substantially larger settlement payments." White & Case LLP, *2010: All Signs Point to a Record-Breaking Year for FCPA Enforcement* (March 1, 2010). This was prescient, indeed. In 2014, 10 companies

paid $1.56 billion in FCPA fines, and in 2017, 11 companies paid over $1.92 billion. Additionally, companies like Avon Products, Inc. and Weatherford International Limited reportedly spent $344 million and $125 million, respectively, on FCPA-related investigation costs alone.   Although enormous, these amounts pale in comparison to the reported $901 million Wal-Mart recently spent on its FCPA compliance investigation after claims of foreign bribery in Mexico arose.[3]

**Cognizant's Anti-Corruption Legal-Compliance Charade**

42.    Despite these clear risks of loss, however, defendants still caused Cognizant to conduct the majority of its business overseas in India without protecting the Company from the substantial risk of corruption.  In the Company's shareholder communications, as a prophylactic measure designed to allay shareholders' concerns without seriously mitigating Cognizant's FCPA legal-compliance risks, defendants consistently reinforced the notion that Cognizant had taken concrete steps to live up to its legal compliance obligations under the FCPA and other applicable anti-corruption laws.  They spoke positively about the Company's purported employee training on anti-corruption and about annual audits by competent staff designed to ferret out corruption within the Company's operations.

---

[3]   FCPA Professor, *Wal-Mart's Pre-Enforcement Action Professional Fees and Compliance Enhancements Top $900 Million* (Nov. 16, 2018), http://fcpaprofessor.com/wal-marts-pre-enforcement-action-professional-fees-compliance-enhancements-top-900-million/ #more-26231.

43.     Further still, while under the stewardship of defendants, Cognizant adopted a plethora of formal polices and policy statements regarding anti-corruption and business ethics, all displayed prominently on the Company's website.   This included a formal "Anti-Corruption Statement," as well as a detailed "Core Values and Code of Ethics" policy.   Both of these policies purported to forbid directors, officers, employees and other agents of Cognizant from paying bribes or making other improper payments to foreign officials to obtain or retain contracts and other things of value.   In particular, the "Core Values and Code of Ethics" stated, in relevant part, as follows:

**THE RIGHT WAY AT COGNIZANT**

In the competitive service environment in which we operate, we must maintain the highest standards of integrity.  Our reputation and our success depend on it.  Whether we're working in a development center, on-site with our customers, in our corporate office, or in our everyday lives, we must be role models of integrity.  Our Core Values ("Values") define the behaviors that will make us successful in the marketplace.

\*        \*        \*

**PREVENTING CORRUPT ACTIVITIES**

**No Bribery**.  ***Bribing a government official is illegal no matter where it occurs***.  Specifically, we do not corruptly give or offer, directly or indirectly, anything of value, including cash, gifts, favors, charitable and political contributions, or hospitality/entertainment, to a government official to obtain or maintain business or any other advantage for the Company.  The same is true for private individuals doing business with Cognizant.

**Maintain Accurate Books and Records**.  ***Anti-corruption laws require that we maintain accurate books and records***.  Never

- 23 -

misconstrue or mislabel a transaction in our books and records. All transactions must be accurately and timely recorded on the Company's books and records.

**Third Parties**. Retaining a third party to make an improper payment or take an action that is inconsistent with this Code or Cognizant's Anti-Corruption Statement is strictly prohibited.

For more information on the Company's expectations in regards to combatting bribery please see our <u>Anti-Corruption Statement</u>.

*         *         *

## NEVER ENGAGE IN INSIDER DEALING

Through our work at Cognizant, some of us may learn about material, nonpublic (or "inside") information, potentially relating to our Company as well as other companies with which we work. ***Trading securities, whether Cognizant's or a company with which we do business, based on inside information is illegal and is strictly prohibited***. Also, we may not give any such inside information – or "tip" – to others who might make trades based on it.

*         *         *

## CREATING AND MAINTAINING ACCURATE AND COMPLETE RECORDS

We are all responsible for upholding all internal controls and for the accuracy of the Company's books and records, including timesheets, travel and expense reports, and financial statements we create and maintain.

44.    Similarly, the "Anti-Corruption Statement" stated, in relevant part, as follows:

### Cognizant Technology Solutions Anti-Corruption Statement

### Why Do We Have This Statement?

***This Statement confirms that Cognizant is committed to doing business ethically and complying with all anti-corruption laws that may apply to***

- 24 -

*the Company including the U.S. Foreign Corrupt Practices Act ("FCPA")*, the U.K. Bribery Act 2010 (the "UK Bribery Act"), and local anti-corruption laws.  No one – neither Cognizant employees nor others acting on Cognizant's behalf – is permitted to offer, make, promise, request, or accept a bribe, or to otherwise make any improper payment in connection with Cognizant's business.

**Scope of Statement**

This Statement applies to all Cognizant *Directors*, *officers*, and employees worldwide as well as all Cognizant business units and subsidiaries, joint ventures over which Cognizant has operational control, and business partners (collectively "Associates").

If local law or a business unit imposes stricter requirements than those described in this Statement, Associates must comply with those rules.

**Requirements**

**Prohibition Against Bribery & Corruption Generally**

Cognizant's rule about corruption is simple: ***we never pay bribes or act corruptly***.

- A **bribe** is any payment or Anything of Value offered or provided to improperly influence a decision-maker or to obtain an unfair business advantage.

- An act is **corrupt** if it is performed to secure an improper advantage, either by paying a bribe or through other means (for example, by paying a kickback or a payoff, or by laundering money).

- **Anything of Value** includes items such as cash, bonuses, gifts, favors, charitable donations, political contributions, offers of employment, offers of hospitality/entertainment, kickbacks, or any other type of preferential benefit.  For further information, please consult the Code.

This Policy prohibits bribery of Government Officials and private persons, or making payments to relatives, friends, or colleagues of a

private person or of a Government Official to obtain an unfair business advantage. This includes the hiring of relatives of a Government Official for the purpose of influencing the official's decision making.

**Dealings with Government Officials**

All Cognizant Associates, no matter where they are located, must pay close attention to interactions with Government Entities and Officials.

A **Government Entity** refers to any:

- Government or government division;

- Department, agency, or instrumentality of such a government or organization;

- Political party; or

- Company or entity owned or controlled (partially or wholly) by or acting on behalf of any of the above.

Examples of Government Entities include, but are not limited to: governments of countries, states, provinces or cities; the United Nations; the International Monetary Fund; a customs or patent office; and state-owned businesses, banks, hospitals, utilities, and universities.

- A **Government Official** is any individual acting in an official capacity for or on behalf of a Government Entity. Examples include, but are not limited to: a customs official; an inspector from a tax, health, or environmental agency; an employee of a state-owned bank; a journalist employed by a state-owned media company; the Chief Technology Officer of a government agency or ministry; a legislator such as a Technology Subcommittee Chairperson of a House of Parliament; a businessperson who is a consultant acting for and on behalf of such Government entity; and a professor or researcher at a state-owned university.

**Facilitation Payments**

A **facilitation payment** is generally a small payment made to a low-level Government Official for the purpose of securing or expediting

the performance of a routine, nondiscretionary government action. Cognizant does not permit facilitation payments absent prior approval in exceptional cases from the Chief Legal Officer/General Counsel.

**Gifts and Entertainment for Government Officials**

Please be aware that Cognizant prohibits providing gifts to Government Officials.

Any entertainment of a Government Official with a value in excess of $20 requires approval from our Chief Compliance Officer.

For further information and guidance regarding Gifts and Entertainment, please see the Gifts and Entertainment Statement.

**Political and Charitable Contributions**

Political contributions made by or on behalf of the Company within the United States are allowed only when such contributions are made under the Cognizant's Political Action Committee. Outside the United States, political contributions are not permitted by, or on behalf of, the Company unless approved in advance by our Chief Legal Officer/General Counsel. If you plan on engaging in any political activities on behalf of the Company or making a political contribution on behalf of the Company in the United States, you must contact the Legal Department prior to taking any action.

A charitable contribution is any payment or other support given to a charitable organization or to an entity organized to provide a public benefit. Cognizant only works with charities that have been vetted to ensure that they are legitimate, reputable and will not be used as a conduit for an improper payment.

All of Cognizant's charitable contributions must be:

- Reasonable in nature and amount;

- Permissible under all applicable laws and regulations;

- Provided in a manner that would not embarrass Cognizant if publicly disclosed;

- Given openly with no appearance of an improper purpose;

- Given without expecting anything in return; and

- Accurately recorded in Cognizant's books and records.

For more information about Cognizant's Charitable contributions and related requests, please see the Company's Guidelines on Charitable Contributions.

\*       \*       \*

## Books, Records & Internal Controls

Cognizant is required to maintain records that accurately reflect its business transactions. Associates who conduct business on Cognizant's behalf must ensure that all transactions (no matter how small) are recorded promptly and accurately, contain sufficient detail, and are supported by accessible documentation. Never misconstrue or mislabel a transaction in our books and records.

## Violations

A violation of anti-corruption laws, the Code, this Statement, or its related procedures is a serious matter and can result in criminal or civil penalties against Cognizant and the individual involved in the violation, as well as harm to Cognizant's reputation.

Associates involved in a violation will be subject to appropriate discipline, up to and including termination.

Any violation of law, the Code, or this Statement may result in a loss of incentive compensation, bonuses, or other awards, to the extent permitted by law.

## Mandatory Reporting of Violations & Guidance on Compliance

Associates have a responsibility to report suspected violations of this Statement, the Code, or of any applicable law. Cognizant is committed to ensuring that an individual does not face retaliation for reporting such concerns. To report concerns or ask questions Associates may contact:

- Any member of the Cognizant Legal Department

- Our Chief Compliance Officer:

  - By email: chiefcomplianceofficer@cognizant.com

  - By fax: 201-801-0243

  - By mail: Cognizant Technology Solutions

    Attn: Chief Compliance Officer
    Glenpointe Centre West
    500 Frank W. Burr Boulevard
    Teaneck, New Jersey 07666

  - Our Chief Legal Officer/General Counsel

  - Our Cognizant Compliance Helpline

The Cognizant Compliance Helpline is serviced by a third-party provider and is available by phone or online 24 hours a day, 7 days a week. Reports of violations or concerns may be made anonymously, where local laws allow. However, you are encouraged to identify yourself when making a report, so that additional information can be obtained if needed. Whenever possible and permitted by law, your identity will be kept strictly confidential. The Compliance Helpline also features a Question Manager, where an Associate may seek advice.

To access the Compliance Helpline via the internet, go to www.cognizant.com/compliance-helpline and follow the instructions for submitting a report.

To make a report by telephone, dial the number specific to your country and follow the prompts:

- U.S. and Canada: 1-866-824-4897

- *India*: AT&T Direct Access Code 000-117 followed by 866-824-4897

- UK: AT&T Direct Access Code 0-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 (or 0-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) followed by 66-824-4897

- All other locations: Use the appropriate access code for your country, followed by 866-824-4897

**The False and Misleading 2014 and 2015 Sustainability Reports**

45. Nevertheless, in breach of their fiduciary responsibilities, between at least June 2015 and August 2016, defendants caused Cognizant to publicly release and widely disseminate materially false and misleading annual Sustainability Reports. █



For example, in June 2015, Cognizant published its 2014 Sustainability Report, █████

In the 2014 Sustainability Report, defendants caused Cognizant to state that it had performed comprehensive audits of anti-corruption compliance and had discovered "no incidents" of corruption. Additionally, in the 2014 Sustainability Report, defendants caused the Company to state that significant ethics and anti-corruption training was provided to Cognizant employees.

46. In particularly, the 2014 Sustainability Report misrepresented, in relevant part, as follows:

**SO 3 Training on Anti-Corruption**.

In 2014, we introduced role based anti-corruption training to supplement the anti-corruption provisions of the general ethics training our employees received. We delivered 331,114 hours of Code of Ethics

- 30 -

training through eLearning in 2014. We also delivered live Code of Ethics trainings to targeted audiences of over 18,000 associates in India and the Philippines. Our formal learning was supplemented in 2014 by education campaigns featuring games, quizzes and prizes.

Additionally, our Enterprise Risk Management group conducts annual risk analysis surveys covering all business units and corporate functions to assess the likelihood of various risks including corruption.

**SO4 Actions taken in response to incidents of corruption**.

*No incidents reported in 2014*.

47.     Similarly, in August 2016, Cognizant published its 2015 Sustainability

Report, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬ In the 2015 Sustainability Report, defendants caused Cognizant to state

that it had performed audits of anti-corruption compliance and had discovered "no

incidents" of corruption. Moreover, defendants caused the Company to state that

significant ethics and anti-corruption training was provided to its employees.

48.     In particular, the 2015 Sustainability Reports misrepresented, in relevant

part, as follows:

**G4-56 The organization's values, principles, standards and norms of behavior such as codes of conduct and codes of ethics**.

\*       \*       \*

***Cognizant treats reports of misconduct seriously***. All reports are reviewed by the Chief Compliance Officer, who appoints a responsible person as appropriate to conduct an informal inquiry or a formal investigation. If a violation of our Standards has occurred, appropriate disciplinary action will be taken against individuals involved as permitted by local laws. Additional steps will be taken if an alleged violation involves an Executive Officer or Board Member.

- 31 -

Today's dynamic global marketplace demands that we achieve the highest standards of behavior. It is therefore critical that all of us at Cognizant make business decisions that align with our ethical principles. This means, in part, that we comply with all applicable anti-corruption laws, rules, and regulations wherever we conduct business.

\*     \*     \*

## SUB-CATEGORY: SOCIETY

### Aspect: Anti-corruption

### G4-SO3 Total number and percentage of operations assessed for risks related to corruption and the significant risks identified

*There were no incidents reported in 2015.*

### G4-SO4 Communication and training on anti-corruption policies and procedures

We delivered 689,288 hours of Code of Ethics training through eLearning in 2015. We also delivered live Code of Ethics trainings to targeted audiences of over 203,947 associates in India. Our formal learning was supplemented in 2015 by education campaigns featuring games, quizzes and prizes. The percentage of Associates completing the online Code of Ethics training was 94%. Anti-Corruption training was provided for 500 hours and delivered for selected associates in Administration, Procurement, Sales & Marketing, Finance and other support Functions.

Additionally, our Enterprise Risk Management group conducts annual risk analysis surveys covering all business units and corporate functions to assess the likelihood of various risks including corruption.

### G4-SO5 Confirmed incidents of corruption and actions taken

*There were no incidents reported in 2015.*

### Defendants' Knowledge and Breaches of Fiduciary Duty

49. ████████████████████████████████████

████████████████████████████████████



50.

51.

52. 

53.



54.



55. <span style="background:black">      </span> Cognizant's bribery scheme in India continued until late September 2016. Then, on September 30, 2016, defendants were forced to reveal that the Company had commenced an internal investigation into Cognizant's compliance with the FCPA, and in particular whether senior Cognizant insiders made improper payments relating to facilities in India in violation of the FCPA or other applicable laws. On the same date, the Company revealed that on September 27, 2016, its President, defendant Coburn, had suddenly resigned.

56. More specifically, defendants admitted in the Company's Current Report on SEC Form 8-K, in relevant part, as follows:

**Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers**.

As announced in the press release attached hereto as Exhibit 99.1 and incorporated by reference into this Item 5.02, on September 27, 2016, Gordon Coburn resigned from his position as President of

Cognizant Technology Solutions Corporation ("Cognizant" or the "Company") . . . .

\*      \*      \*

The Company is conducting an internal investigation into whether certain payments relating to facilities in India were made improperly and in possible violation of the U.S. Foreign Corrupt Practices Act and other applicable laws. The investigation is being conducted under the oversight of the Audit Committee, with the assistance of outside counsel, and is currently focused on a small number of Company-owned facilities. The Company has voluntarily notified the United States Department of Justice (the "DOJ") and United States Securities and Exchange Commission (the "SEC") and is cooperating fully with both agencies. The internal investigation is in its early stages, and the Company is not able to predict what, if any, action may be taken by the DOJ, SEC or any governmental authority in connection with the investigation or the effect of the matter on the Company's results of operations, cash flows or financial position.

57. Just as Cognizant shareholders were digesting these distressing disclosures, defendants stunned them again on November 7, 2016. In the Company's Quarterly Report on SEC Form 10-Q for the third quarter of 2016, defendants admitted that the Company's internal investigation indicated that members of Cognizant's senior management may have been involved in the bribery scheme, that the internal investigation had uncovered more than $5 million in improper payments, and that Cognizant had a material weakness in its internal control over financial reporting from at least December 31, 2015 to September 30, 2016.

58. More specifically, the Form 10-Q stated, in relevant part, as follows:

**Internal Investigation and Related Matters**

On September 30, 2016, we disclosed that we are conducting an internal investigation into whether certain payments relating to Company-owned facilities in India were made improperly and in possible violation of the U.S. Foreign Corrupt Practices Act, or FCPA, and other applicable laws. In September 2016, we voluntarily notified the U.S. Department of Justice, or DOJ, and Securities and Exchange Commission, or SEC, and are cooperating fully with both agencies. The investigation is being conducted under the oversight of the Audit Committee, with the assistance of outside counsel. . . .

*. . . Specifically, we did not maintain an effective tone at the top as certain members of senior management may have participated in or failed to take action to prevent the making of potentially improper payments by either overriding or failing to enforce the controls established by the Company relating to real estate and procurement principally in connection with permits for certain facilities in India. . . .* Based on the results of the investigation to date, the members of senior management who may have participated in or failed to take action to prevent the making of the identified potentially improper payments are no longer with the Company or in a senior management position.

As a result of the foregoing, we have determined that a material weakness existed as of December 31, 2015, and continues to exist in subsequent interim periods, in our internal control over financial reporting.

59.     Later, on March 1, 2017, defendants admitted in Cognizant's 2016 Annual Report on SEC Form 10-K that the bribery scheme had been going on since at least 2010, that the scheme potentially involved several members of Cognizant's senior management, and that the scheme resulted in several expensive-to-defend federal securities actions being filed against Cognizant and members of senior management. Specifically, the 2016 Form 10-K stated, in relevant part, as follows:

We are conducting an internal investigation focused on whether certain payments relating to Company-owned facilities in India were made improperly and in possible violation of the FCPA and other applicable laws. . . . *To date, the investigation has identified a total of approximately $6 million in payments made between 2010 and 2015 that may have been improper.*

\*      \*      \*

As previously disclosed, the Company is conducting an internal investigation focused on whether certain payments relating to Company-owned facilities in India were made improperly and in possible violation of the U.S. Foreign Corrupt Practices Act, or FCPA, and other applicable laws.  In September 2016, we voluntarily notified the Department of Justice, or DOJ, and the Securities and Exchange Commission, or SEC, and are cooperating fully with both agencies.  The investigation is being conducted under the oversight of the Audit Committee, with the assistance of outside counsel.  *To date, the investigation has identified a total of approximately $6 million in payments made between 2010 and 2015 that may have been recorded improperly.* . . .  Based on the results of the investigation to date, the members of senior management who may have participated in or been aware of the making of the identified potentially improper payments and failed to take action to prevent the making of the identified potentially improper payments are no longer with the Company or in a senior management position.

60.     In the wake of these revelations, Cognizant's stock price collapsed from $55.00 to $47.71 per share, or more than 13%, wiping out more than $4.4 billion in once valuable shareholders' equity.

61.     Then, on February 15, 2019, following its investigation into Cognizant's FCPA compliance, the SEC concluded that Cognizant violated the FCPA and ordered the Company to pay $25,167,368 in fines and penalties.  Specifically, the SEC held that:

- 39 -

Cognizant paid bribes to an Indian government official to induce that official to direct that a permit be issued to facilitate the completion of a construction project. Cognizant made use of the means and instrumentalities of interstate commerce by hosting video conferences at which American executives participated in formulating the scheme and by exchanging email messages to and from the United States to approve the concealing of the payment. Two U.S. senior executives at Cognizant took active steps to advance the scheme, and Cognizant is liable for their conduct by *respondeat superior*. As a result, Cognizant violated Exchange Act Section 30A.

*        *        *

22.    Cognizant violated Exchange Act Section 13(b)(2)(A) by falsely characterizing illicit payments to government officials as legitimate business expenses in its books and records.

*        *        *

24.    Cognizant violated Section 13(b)(2)(B) by failing to devise and maintain a sufficient system of internal accounting controls at its corporate headquarters and at Cognizant India. Cognizant's system for handling contractor change orders in India permitted managers to conceal bribe payments through the manipulation of bogus construction charges. The company's procurement process did not include an effective review of the disbursement of funds for change orders. Nor did it include an effective review of the application or renewal of facility permits and licenses. Cognizant also did not adequately enforce its corporate policy against making improper payments to government officials. And it failed to provide reasonable assurances that its Indian subsidiary maintained accurate and complete records of transactions involving payments to government officials.

Order Instituting Cease-And-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-And-Desist Order, at 5-6, *In the Matter of Cognizant Tech. Solutions Corp.*, Adm. Proc. File No. 3-19000 (Feb. 15, 2019) ("SEC CDO").

## DAMAGES TO THE COMPANY

62.    As a result of defendants' fiduciary failures, Cognizant has suffered, and will continue to suffer, substantial damages, injuries and losses.  For example, the Company has been named as a primary defendant in a costly and expensive-to-defend class action lawsuit for violations of the federal securities laws pending before the U.S. District Court for the District of New Jersey ("Securities Action").  *See In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 2:16-cv-06509 (D.N.J.).  On August 8, 2018, the District Court, the Honorable Senior U.S. District Court Judge William H. Walls presiding, denied the Motion to Dismiss the §10(b)(5) federal securities fraud claims against Cognizant, finding that "Plaintiffs have adequately alleged a material bribery scheme" and that, as a result, certain statements "touting the benefits of the SEZs licenses" published in the Company's SEC filings and Sustainability Reports were false and misleading.

63.    In particular, the District Court held, in relevant part, as follows:

> Defendants argue that the Amended Complaint fails to adequately allege a violation of Section 10(b) or 20(a).  Defendant contends that Plaintiffs fail to allege any material false or misleading statement, and further assert that the Amended Complaint fails to allege that any Defendant acted with scienter.

*     *     *

### ii.  Statements Emphasizing Legal Compliance and Anti-Corruption Controls

The amended complaint alleges that Defendants made statements emphasizing their legal compliance and anti-corruption controls.  These

- 41 -

statements appear in Cognizant's Anticorruption Policy, Code of Conduct, and 2014 and 2015 Sustainability Reports. The amended complaint asserts that these statements were materially false and misleading because Cognizant and its senior management were engaged in a bribery scheme at the time the statements were made. *Id.* ¶95.

Defendants first argue that the none of the statements in the Anticorruption Policy, Code of Conduct, and Sustainability Reports is actionable because they are "inherently aspirational." Cognizant Br. at 17. Defendants further argue that even if they are actionable, the statements are not false and misleading.

*     *     *

### 2.     *Sustainability Reports*

Unlike the Code of Conduct and Anticorruption Policy, ***the Court finds statements in the Sustainability Reports to be materially false and misleading***. The 2014 Sustainability Report states that Cognizant "delivered 333,114 hours of Code of Ethics training through eLearning in 2014," and "delivered Code of Ethics trainings to targeted audiences of over 18,000 associates in India and the Philippines." Am Compl. ¶ 129. The 2014 Sustainability Report gave further detail about its training programs, and went on to state that "our Enterprise Risk Management group conducts annual risk analysis surveys covering all business units and corporate functions to assess the likelihood of various risks including corruption." ***The 2014 Report also stated that there were "no incidents [of corruption] reported."*** *Id.* ¶¶ 129, 136. ***The 2015 Sustainability Report also stated that there were "no incidents [of corruption] reported,"*** and additionally that "no [significant risks related to corruption] reported." *Id.* ¶ 136. These are not aspirational statements of company policy, ***but statements of fact and representations about the current state of affairs*** that are capable of falsity and upon which a reasonable investor may rely.

***The Court finds that Plaintiffs have adequately alleged that the statements in the Sustainability Reports about anticorruption training were materially false and misleading***. At the time that Cognizant was making statements highlighting its anticorruption training, it was allegedly engaged in a bribery scheme involving members of senior management. These statements are misleading for this reason alone. *See*

- 42 -

> *Petrobras*, 116 F. Supp. 3d at 380-81 (finding statements regarding effectiveness of internal controls misleading because company was engaged in extensive corruption at the time of the statements).
>
> Further, Plaintiffs have put forth additional allegations demonstrating the falsity of specific statements in the Sustainability Reports. The Sustainability Reports reported that there were "no incidents [of corruption] reported" and "no [significant risks related to corruption] reported." Am. Compl. ¶¶ 129,136. These statements were made in August 2016 June 2015, after the conclusion of the 2015 Audit wherein FE1 discovered red flag payments made in connection with SEZ licenses. FE1 considered the payments to be suspicious enough to warrant further investigation, and upon such investigation, was met with unsatisfactory answers from Cognizant employees. *Id.* ¶ 70. FE1 then reported the findings of the audit to his superior, and the information was further emailed to Misty Pederson (not a named Defendant), one of Cognizant's most senior compliance executives. *Id.* ¶ 73. It is plausible that these payments constituted "corruption" or a "risk of corruption," and that FE1 "reported" them to the person to whom he was instructed to report. Because the 2015 Audit had been completed before either of the Reports was published, it is plausible that this reporting occurred before the statements were made.

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 2:16-cv-06509-WHW-CLW, 2018 WL 3772675, at *11, *15, *17-*18 (D.N.J. Aug. 8, 2018).

64.   Additionally, the Company paid over $25 million in fines and penalties for violating the FCPA and incurred over $60 million more in investigative costs and expenses. The Company also has, or will, incur millions in costs arising from the implementation of the remedial measures contained in the SEC CDO.

65.   Further, Cognizant's reputation as a good corporate citizen is in ruins and its goodwill is most likely irreparably impaired. Moreover, while under the stewardship of defendants, Cognizant wastefully spent approximately $42 million to

repurchase 650,000 shares of Cognizant stock on the open market at prices artificially inflated by defendants' false and misleading statements about the Company's business, operations and prospects.

66.     Defendants, however, have not fared nearly so badly.  On the contrary, they have pocketed over $23,589,201 in director and executive compensation not justified by Cognizant's performance while under their stewardship.  Moreover, defendants D'Souza, Klein, Breakiron-Evans, Fox, Mackay, Wendel, Narayanan, Coburn, Schwartz and McLoughlin have reaped $80,493,140 in unlawful insider trading proceeds by selling 1,331,237 shares of their personal Cognizant stock based on adverse material non-public information.

67.     This notwithstanding, the Cognizant Board has not – and will not – bring legal action against the directors responsible for this debacle.  Therefore, by this action plaintiffs seek to vindicate Cognizant's rights against its wayward fiduciaries.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

68.     Plaintiffs incorporate ¶¶1-67.

69.     Plaintiffs bring this action for the benefit of Cognizant to redress injuries suffered, and to be suffered, by Cognizant due to defendants' violations of law, as well as the aiding and abetting thereof.  Plaintiffs will adequately and fairly represent the interests of Cognizant in enforcing and prosecuting these derivative claims.  Cognizant is named as a nominal party only in this action.

70.    The Cognizant Board has ten members:  defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay and Patsalos-Fox and non-defendants John M. Dineen and Joseph M. Velli (together, the "Board").  A pre-suit demand on the Cognizant Board to commence this action is excused as a futile and useless act for several reasons.

71.    First, as Cognizant's directors and top officers, defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay and Patsalos-Fox owed Cognizant fiduciary duties of candor, good faith and loyalty.  Rather than speak the entire truth when they said, or caused to be said, anything about the Company, defendants breached their fiduciary duties of candor, good faith and loyalty by disseminating false and misleading statements about the Company's FCPA and anti-corruption legal compliance, exposing Cognizant to liability to Cognizant shareholders for violating the federal securities laws.  Therefore, because defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay and Patsalos-Fox are interested in the outcome of this litigation, the Board cannot fairly or objectively consider a pre-suit demand.  As such, a pre-suit demand on the Board is futile and excused.

72.    Second, defendant D'Souza is employed full time by the Company and has received and will continue to receive substantial monetary compensation as a result of that employment.  Defendant D'Souza will act to preserve and not threaten

- 45 -

his positions of control and the perquisites thereof and, therefore, is incapable of exercising independent objective judgment in deciding whether to bring this action.

73.     Third, defendants Klein, Abdalla, Breakiron-Evans, Chadwick and Mackay served on the Audit Committee of the Board, the body principally responsible for oversight of the Company's annual and quarterly SEC filings on Form 10-K and Form 10-Q and earnings press releases on Form 8-K. In this capacity Klein, Abdalla, Breakiron-Evans, Chadwick and Mackay reviewed and approved Cognizant's annual and quarterly reports on Form 10-K and Form 10-Q and earnings press releases on Form 8-K. Yet, while under their stewardship, the Company issued the materially false and misleading 2014 and 2015 Sustainability Reports praising Cognizant's anti-corruption law compliance. As a result, defendants Klein, Abdalla, Breakiron-Evans, Chadwick and Mackay are liable for breaching their fiduciary duties of loyalty. Because defendants Klein, Abdalla, Breakiron-Evans, Chadwick and Mackay are interested in the outcome of this litigation, a pre-suit demand on them would be futile and is excused.

74.     Fourth, defendants Klein, Abdalla, Fox, Breakiron-Evans and Patsalos-Fox served on the Corporate Governance Committee of the Board, the body principally responsible for oversight of the Company's management of key risks, including legal and regulatory compliance. In this capacity, Klein, Abdalla, Fox, Breakiron-Evans and Patsalos-Fox were responsible for the oversight of Cognizant's

- 46 -

compliance with anti-corruption and insider trading laws. Nevertheless, while under their stewardship, the Company issued the materially false and misleading 2014 and 2015 Sustainability Reports praising Cognizant's anti-corruption law compliance. As a result, defendants Klein, Abdalla, Fox, Breakiron-Evans and Patsalos-Fox are liable for breaching their fiduciary duties of loyalty. Because defendants Klein, Abdalla, Fox, Breakiron-Evans and Patsalos-Fox are interested in the outcome of this litigation, a pre-suit demand on them would be futile and is excused.

75.     Fifth, defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay and Patsalos-Fox have demonstrated an unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein.    These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies. Therefore, defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay and Patsalos-Fox are not able to and will not vigorously prosecute any such action.

76.     Sixth, while Cognizant shares traded at artificially prices, defendants D'Souza, Klein, Breakiron-Evans, Fox and Mackay collectively sold 861,237 shares of their personal Cognizant holdings for insider trading proceeds of $50,725,326. These defendants sold their Cognizant shares without first disclosing adverse material

non-public information about the ineffectiveness of Company's anti-corruption legal compliance and the Indian bribery scheme.  Defendants D'Souza, Klein, Breakiron-Evans, Fox and Mackay therefore face a substantial likelihood of liability for breaching their fiduciary duty of loyalty and are unable to fairly and objectively consider any demand that plaintiffs may have made.

77.    Plaintiffs have not made any demand on Cognizant shareholders to institute this action since such demand would be a futile and useless act for several reasons.  First, Cognizant is a publicly traded company with approximately 577 million shares of stock outstanding, held by thousands of individuals and entities spread throughout the country.  Second, making demand on such a number of shareholders spread throughout the country would be impossible for plaintiffs who have no way of finding out the names, addresses, or phone numbers of such shareholders.  And third, making demand on all shareholders would force plaintiffs to incur significant expenses, assuming all shareholders could be individually identified.

## COUNT I

### For Breach of Fiduciary Duty Against All Defendants

78.    Plaintiffs incorporate ¶¶1-77.

79.    As Cognizant's directors and top officers, defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman, Wendel, Narayanan, Coburn, Schwartz and McLoughlin owed Cognizant and its

shareholders fiduciary duties of candor, good faith and loyalty. Nevertheless, while under the stewardship of defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman, Wendel, Narayanan, Coburn, Schwartz and McLoughlin, Cognizant issued the 2014 and 2015 Sustainability Reports, which lacked a reasonable factual basis when issued. These reports represented that there were no reported incidents of corruption in 2014 and 2015 when, in fact, members of senior management were orchestrating a bribery scheme in India designed to secure licenses necessary for the Company's operations. ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

80.     As a result of defendants' fiduciary failures, Cognizant has been damaged.

81.     Plaintiffs, on behalf of Cognizant, have no adequate remedy at law.

### COUNT II

### For Corporate Waste Against All Defendants

82.     Plaintiffs incorporate ¶¶1-77.

83.     By their wrongful acts and omissions, defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman, Wendel, Narayanan, Coburn, Schwartz and McLoughlin wasted Cognizant's valuable

corporate assets by, among other things, causing the Company to pay improper compensation, including cash, fees, stock awards and other compensation, to themselves and other Cognizant insiders who breached their fiduciary duties of loyalty, candor and good faith owed to Cognizant. Cognizant received no benefit from these improper payments. As a result, defendants damaged Cognizant and are liable to the Company for corporate waste.

84.  Plaintiffs, on behalf of Cognizant, have no adequate remedy at law.

## COUNT III

## For Unjust Enrichment Against All Defendants

85.  Plaintiffs incorporate ¶¶1-77.

86.  By their wrongful acts and omissions, defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman, Wendel, Narayanan, Coburn, Schwartz and McLoughlin were unjustly enriched at the expense and to the detriment of Cognizant.

87.  All the payments and benefits provided to defendants D'Souza, Klein, Abdalla, Breakiron-Evans, Chadwick, Fox, Mackay, Patsalos-Fox, Weissman, Wendel, Narayanan, Coburn, Schwartz and McLoughlin were at the expense of Cognizant. The Company received no benefit from these payments.

88.  Plaintiffs, on behalf of Cognizant, seek restitution from defendants, and each of them, and seek an order of this Court disgorging all profits, benefits and other

compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

89.     Plaintiffs, on behalf of Cognizant, have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment as follows:

A.     Against defendants and in favor of the Company for the amount of damages sustained by the Company as a result of defendants' breaches of fiduciary duty, corporate waste and unjust enrichment;

B.     Directing Cognizant to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Cognizant and its shareholders from a repetition of the damaging events described herein;

C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity and the state statutory provisions sued hereunder, including attaching, impounding and imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiffs on behalf of Cognizant have an effective remedy;

D.     Awarding to Cognizant restitution from defendants, and each of them, including ordering disgorgement of all profits, benefits and other compensation obtained by defendants;

E.     Awarding plaintiffs the cost and disbursement of the action, including

reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury.

DATED: March 11, 2019               COHN LIFLAND PEARLMAN
                                       HERRMANN & KNOPF LLP
                                    PETER S. PEARLMAN
                                    MATTHEW F. GATELY


                                    _Matthew Gately_
                                    MATTHEW F. GATELY

                                    250 Pehle Avenue, Suite 401
                                    Saddle Brook, NJ 07663
                                    Telephone: 201/845-9600
                                    201/845-9423 (fax)

                                    ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                    BENNY C. GOODMAN III
                                    ERIK W. LUEDEKE
                                    655 West Broadway, Suite 1900
                                    San Diego, CA 92101
                                    Telephone: 619/231-1058
                                    619/231-7423 (fax)

                                    CAVANAGH & O'HARA
                                    BRITT W. SOWLE
                                    101 West Vandalia Street, Suite 245
                                    Edwardsville, IL 62025
                                    Telephone: 618/692-5250
                                    618/692-5254 (fax)

                                    Attorneys for Plaintiffs

- 52 -

## VERIFICATION

I, Glyn Ramage, acting on behalf of and with the consent of the Trustees of the Employers &
Laborers Locals 100 and 397 Pension Fund, hereby verify that I am familiar with the allegations in
the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Corporate Waste and
Unjust Enrichment ("Complaint"), and that I have authorized the filing of the Complaint and that the
foregoing is true and correct to the best of my knowledge, information and belief.

Executed this ___1___ day of M<u>ARCH</u>, 2019.

LABORERS & EMPLOYERS LOCALS 100 AND
397 PENSION FUND

By: _____

Title: ADMINISTRATOR

1 of 2